## KERR *v.* MILWEE ET AL.

[No. 121, October Term, 1952.]

236

*Decided April 17, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*T. Lyde Mason, Jr.,* for the appellant.

*William B. Somerville,* with whom were *Clater W. Smith* and *Clark, Thomsen & Smith* on the brief, for the appellees.

HENDERSON J., delivered the opinion of the Court.

This appeal is from a judgment for the defendants upon verdicts directed by the court at the close of the plaintiff's case. The action was for damages for breach of contract and for negligence, in separate counts, caused by the backfilling of earth against the foundation wall of a house in process of erection upon the plaintiff's land.

It appears that in the fall of 1949 the plaintiff, a sheet metal worker, undertook to build a house upon his lot, acting as his own architect and builder. He made the excavation for a cellar and poured the concrete footings for the foundation walls, but did not lay the cellar floor. In the spring of 1950, he erected foundation walls of concrete and cinder block, and laid the first floor joists and the subflooring. Work was then suspended and the whole covered with tarpaper and boards. In April 1951 he got in touch with Mr. Milwee, the owner of a bulldozer, and told him he wanted to have the trench outside the walls filled in and the lot graded. Milwee and the plaintiff met on Sunday and looked the ground over; there was water in the cellar and mud in the bottom of the trench. The plaintiff showed him what he wanted done and they agreed upon the price. Milwee said he would send his operator, Bragg, over with the machine the next day, and inquired if anyone would be there to show the man what was to be done. The plaintiff said that he would be there. The operator came about 1:30 P.M. on Tuesday and Kerr showed him what he wanted done. It was raining. Bragg made a "couple of passes", but said the bulldozer blade was not working right, that he would have to have it repaired and return the next day about 10 A.M. When the plaintiff arrived about 9:30 A.M. the backfill had been completed and the rear foundation wall was cracked. There had been no crack in the wall on the previous day. He said to Bragg, "You must have hit that wall." Bragg denied that he had hit it. Kerr testified that there was a red paint mark at the corner of the wall. There was no

testimony as to the color of the bulldozer. Kerr also testified that he examined and measured the treadmarks of the bulldozer, but admitted there was no mark closer to the wall than 28 inches at any point, although he said the marks were about 12 to 14 inches at one corner.

Ernest Volk, a bricklayer, testified that he checked the rear wall and it had been pushed out of plumb, "it leans in below grade level and it leans out above grade level." There was a long horizontal crack. Charles Kellner, a contracting engineer called by the plaintiff as an expert, testified that it is not a safe practice to backfill until a house is erected, since the weight of the house would in crease the wall's stability, or unless the wall is supported by some mechanical means, such as shoring or propping. He denied that the crack could have been caused by ice or action of the elements; in his opinion the crack was caused by an external force. He testified: "We wouldn't even put our bulldozers close to a wall of that type unless it was weighted down even under dry conditions." Under wet conditions, "any load superimposed on top of that soil will be transferred against the wall."

We think there is no legally sufficient evidence to show that the bulldozer actually struck the wall. The testimony clearly shows that the crack was caused by the backfilling, that is to say, by the pressure of the bulldozer and the earth exerted against the unsupported base of the wall in the muddy trench.

The appellant contends that Milwee was an independent contractor and there was not a relation of master and servant between the parties. We think the inquiry is not material to the issue here presented. The decisive question is as to the scope of the undertaking. Cf. Otis Elevator Co. v. Embert, 198 Md. 585, 84 A. 2d 876, and Kettle v. R. J. Loock & Co., 199 Md. 95, 85 A. 2d 459. Milwee undertook to backfill the trenches around the incomplete structure and to grade the land. He contends that he performed this work as agreed and according to the directions of the owner. The

injury was not due to the manner in which the work was performed but to the instability of the wall erected by the owner. Kerr contends that the work was not performed with ordinary skill and care, and that the contractor is liable either for breach of the implied undertaking or for negligence.

It is important to note that neither of the parties was an engineer, and neither was conscious of the danger explained by the expert. There is no evidence that Milwee had any experience in building operations, or held himself out to be an expert on the subject of stresses. Moreover, he had no choice of methods. He either had to accept the job of moving the earth, or to decline to do so. Obviously the extra expense of shoring the wall was not within the contemplation of either party. Nor was Milwee in a position to know the strength of the submerged footing or how it was secured at the base. Under the circumstances, we think the risk of damage to the wall was upon the owner.

"If a building contractor does his work in accordance with the plans and specifications and without negligence, he will not be liable to the owner where the building is subsequently damaged by reason of some defect in the building or some fault of the soil, in the absence of an express warranty that the plans and specifications are sufficient, inasmuch as he does not warrant their sufficiency but only the skill and care with which he performs his work and the soundness of the materials used therein." *Gaybis v. Palm,* 201 Md. 78, 85, 93 A. 2d 269, 272. *Cf. Reinhart Constr. Co. v. Baltimore,* 157 Md. 420, 423, 146 A. 577, and *Hammaker v. Schleigh,* 157 Md. 652, 664, 147 A. 790, 65 A. L. R. 1285. See also *Adams v. Tri-City Amusement Co.,* 124 Va. 473, 98 S. E. 647, and note 88 A. L. R. 797.

In *Allen v. Kraus,* 358 Mo. 520, 215 S. W. 2d 739, defendants contracted to move earth from one side to the other of the roof to an underground garage, and *vice versa,* so that the roof could be repaired. The term used was to "stockpile" it there. The roof collapsed because the

contractors placed it in one pile, instead of several. In holding the contractors liable for failure to use ordinary skill and care the court stressed the fact that the contractors were experienced in that line of work, and the damage would not have occurred if the work had been done in such a manner as to distribute the load. We think the case is distinguishable. In the instant case the work was done according to the owner's directions, the contractor made no representations or warranties, and had no choice of means. There is no evidence that the earth was moved in an unworkmanlike manner.

*Judgment affirmed, with costs.*